## McCourt vs. Eckstein.

*Disseizin or trespass ?—Estoppel in pais.*

1. Where some of the stones of defendant's foundation wall projected eight inches over plaintiff's land: *Held* (Dixon, C. J., doubting), that plaintiff might treat this as a *disseizin* rather than a *trespass*, and might maintain ejectment.
2. But if, when plaintiff excavated for his wall adjoining that of defendant, the latter offered to remove the projecting stones, so as to give plaintiff full possession, and was prevented by him from so doing, the action could not be maintained.

APPEAL from the Circuit Court for *Winnebago* County. Ejectment, for a strip of land 147 feet long and six inches wide, in the city of Oshkosh. Defendant owned a lot

McCourt vs. Eckstein.

immediately south of one belonging to plaintiff, and had erected a brick building thereon, upon a stone foundation. Plaintiff afterwards erected a similar building on his lot, putting his wall eight inches from defendant's north *brick* wall, and, as he claims, at least that far from the division line. These eight inches include the premises in controversy, which plaintiff claims he is prevented from building upon by the projection thereupon of defendant's stone foundation wall. The mason who built plaintiff's foundation walls, testified at the trial that defendant's *stone* foundation on the north side is eight inches north of his *brick* wall; that they laid plaintiff's brick wall eight inches from defendant's brick wall, because they could get no nearer; that in order to get nearer, they would have had to build partly on defendant's foundation; could not make a good job in that way, because a part would settle, and a part would not, and the wall would crack; and if defendant should take away his wall, it would in that case endanger plaintiff's wall. As to the extent of the projection, he testified that defendant's stone wall was four or five feet deep; that it projected beyond the brick wall "the whole length of the building;" that he thought there was no projection at all at the top; that he measured in about a dozen different places, and in some the projection was more and in some less than eight inches. The defendant testified in his own behalf as follows: "I never occupied any ground north of my brick wall. Plaintiff dug his trenches last August. He called me out of my store and said my stones were on his land. I told him I would cut them off. He said I had not money enough to do it. I told him that did not concern him; I would do it if he wanted it done. On the top of the foundation wall, the brick and stone were even. Sixteen feet back, about two feet down, two stones were sticking out. I offered to cut them off. The balance was all clear. It is is eight inches ·

between my brick wall and *McCourt's.* I don't occupy that space. There are bricks running out in fifteen or twenty places against my building. I did not want any support. *McCourt's* men put them in there when they built his building. I did not interfere with his men. I never made any claim to that space beyond my brick wall." One Wilson, a mason, testified for defendant: "*McCourt,* if he had a sufficient foundation, could have built up against *Eckstein's* wall. I could have built his building close up to *Eckstein's.* There is no trouble in building the two walls together; but if *Eckstein's* foundation should be taken away, the building next to it would fall down."

The court instructed the jury that as to the land north of defendant's brick wall, which is claimed to be covered by his foundation, plaintiff could not recover, unless, when the action was commenced, defendant was in possession thereof, and wrongfully withheld the possession from the plaintiff; that if plaintiff could build a wall as well now, and could use and enjoy his property as completely as before the wall of defendant was built, then there is no wrongful occupation, even though the bottom of defendant's foundation does overreach eight inches on plaintiff's land; that this would not be such an occupancy as would authorize the maintenance of this action, unless defendant claimed title to that portion of the premises or interfered with its occupancy by plaintiff. —Verdict and judgment for the defendant; and plaintiff appealed.

*C. Coolbaugh,* for appellant:

Where a right of entry exists, and the interest is tangible, so that possession can be delivered, ejectment will lie for it. *Jackson v. Buel,* 9 Johns., 298; *Jackson v. May,* 16 id., 184; *Childs v. Chappel,* 9 N. Y., 246. Ejectment will lie for a portion of space occupied by the overhanging of a wall over another's land. *Sherry v. Frecking,* 4 Duer, 452.

*Gabe Bouck*, for respondent, contended that there was no error in the charge, and the jury must have found that defendant did not occupy the land in any way that interfered with plaintiff's enjoyment of it. He also contended that if the plaintiff had any remedy it was in trespass and not in ejectment. Sec. 3, chap. 141, R. S.; *Redfield v. U. & S. R. R. Co.*, 25 Barb., 54.

DIXON, C. J. Whether the overreaching of the bottom of *Eckstein's* foundation wall eight inches on to the land of *McCourt*, or, as some of the witnesses testify, the projection of some of the stones of the foundation eight inches over on to *McCourt's* lot, constitutes such an ouster or disseizin of *McCourt* as will enable him to maintain ejectment, is a matter of which I have very great doubt. I am strongly inclined to think that it does not. My brethren, however, are of a contrary opinion, and think that it is such an occupancy by *Eckstein*, and disturbance of the full and free use and enjoyment of *McCourt*, as authorizes the maintenance of the action. They are therefore of opinion that there must be a new trial for error in the second instruction given to the jury at the request of the defendant. What constitutes a disseizin is not now, perhaps, a question of very much doubt. Lord MANSFIELD said about a century ago, in *Taylor v. Horde*, 1 Burr., 110, that the precise definition of what constituted a disseizin was not *then* to be found. "The more we read, unless we are very careful to distinguish, the more we shall be confounded." But Mr. Justice STORY remarks, in *Prescott v. Nevers*, 4 Mason, 329, that "notwithstanding the language of Lord MANSFIELD, what constitutes a disseizin is, at least in this country, well settled. I remember to have heard a learned judge (the late Chief Justice PARSONS) say, that Lord MANSFIELD had not gone to the bottom of this matter, and had puzzled himself unnecessarily. This

observation attracted my attention at an early period of my
professional life, and I have made some researches to ascer-
tain its accuracy.    This is not, however, the proper occasion
to investigate the subject at large.    There is a distinction
between disseizins *in spite* of the owner, and disseizins at his
election.    But the distinction often turns upon other prin-
ciples than those which have been stated.    The owner can-
not elect to consider himself disseized, where the act is not
of such a nature as in law affords a presumption of a dissei-
zin.    But where an act is done, which is equivocal, and may
be either a trespass or disseizin according to the intent, there
the law will not permit the wrong doer to qualify his own
wrong, and to explain it to be a mere trespass, unless the
owner elects to so consider it."    "To constitute an ouster
of him who was seized," says Chief Justice PARSONS, in
*Proprietors of Kennebeck Purchase v. Springer*, 4 Mass., 418,
"the disseizor must have the actual, exclusive occupation of
the land, claiming to hold it against him who was seized, or
he must actually turn him out of possession."    Mr. GREEN-
LEAF, in a note to page 51 of the first volume of his Cruise
on Real Property (note 3), sums up the authorities in a very
satisfactory manner.    He says that in the United States, as
in England, two kinds of disseizin are recognized; namely,
a disseizin in spite of the owner, also termed a disseizin in
fact; and a disseizin by the election of the owner, also
termed a disseizin by construction of law.    The effect of the
former is to give the disseizor an absolute title in fee, against
all the world, if he is suffered to remain in undisturbed
possession of the land during the time expressed in the
statute of limitations.    The latter is created by acts without
actual force, and in themselves equivocal, and not necessa-
rily amounting to an entire and immediate ouster of the
freehold, but which the owner may, if he pleases, treat as
usurpations of his freehold, for the sake of vindicating his

title by an action at law.    Such is the case where a tenant for life or years makes a feoffment; or where a tenant at will makes a lease for years; or where a lease is made by a stranger, and the lessee enters under it, without force.    In these and the like cases, as the act of entry is equivocal, and may be either a trespass or a disseizin according to the intent, the law will not permit the wrong doer to qualify his own wrong, and to explain it to be a mere trespass, unless the owner elects so to consider it.    To constitute a disseizin of the former class, or in spite of the owner, the act must be an unequivocal act of ownership, open, known, exclusive, adverse, and uninterrupted.    A disseizin of this kind may be made, not only by an actual and forcible turning the owner out of the possession, but by entering under a conveyance from one who has no title; by any entry under claim or color of title; by occupying and cultivating it, under claim of title, though it be not the rightful title, such as a defective levy, or merely a claim of an exclusive right to possess.    It must be adverse to the title of the true owner; that is, utterly inconsistent with his title, and with an express or tacit denial of it.

It seems very clear that this case discloses no ouster of the former kind, that is, in spite of the owner  *Eckstein's* occupation is not exclusive.  *McCourt* is at liberty to occupy, and, it seems, does in fact occupy all of the eight inch strip of land except the small space actually taken up by the projecting stones of *Eckstein's* foundation wall.    And even that space he might have occupied had he so chosen at the time of building his own store.    It is one of those wrongs which is remediable by act of the owner himself.    He was so far in actual and peaceable possession, that he might have broken off and removed the projecting stones from *Eckstein's* wall.    See 2 Crabbe on Real Property, title, *"Redress by the act of the party,"* §§ 2473–75.

But my brethren are of opinion that the encroachment of the wall is a disseizin by construction of law, or at the election of the owner. In this they may be, and probably are, quite right, but it is extremely difficult for me to say that any such casual and unintentional trespass upon the land of another without a claim of title, comes within the rule. I very much doubt whether it does, and whether *McCourt's* remedy is not by action of trespass. In some of the states it is held, as will be seen by Mr. GREENLEAF's note above referred to, that occupation by mistake and through misapprehension of the dividing lines, does not amount to a disseizin. In other states it is held that it does. In *Aiken v. Benedict*, 39 Barb., 400, it was decided that where one erects a building upon the line of his own premises, so that the eaves or gutters project over the land of his neighbor, this is not such an encroachment upon the possession of the latter as will sustain an action of ejectment; and that an action for a nuisance is the appropriate remedy in such case. On the contrary, it was decided in *Sperry v. Frecking*, 4 Duer, 452, that ejectment would lie for a portion of space occupied by the overhanging of a wall over land belonging to the plaintiff. And *Stedman v. Smith*, 92 Eng. Com. Law, 1, seems to be a very strong case in the same direction. It was an action of trespass by one tenant in common against another, to maintain which an actual ouster must be shown. The plaintiff and defendant occupied adjacent plots of ground, divided by a wall of which they were the owners in common. There was a shed in defendant's ground contiguous to the wall, the roof of which rested on the top of the wall across its whole width. Defendant took the coping stones off the top of the wall, heightened the wall, replaced the coping stones on the top, and built a wash-house contiguous to the wall, where the shed had stood, the roof of the wash-house occupying the whole width of the top of the

wall; and he let a stone into the wall with an inscription on it stating that the wall and the land on which it stood belonged to him. It was held that, on these facts, a jury might find an actual ouster by the defendant of the plaintiff from possession of the wall, which would constitute a trespass upon which the plaintiff might maintain an action against the defendant. It is to be observed, however, of this case, that there was a clear claim of title on the part of the defendant.

It appears from the record, that some evidence was given on the parts of *Eckstein* tending to show that at the time *McCourt* excavated and was laying the foundation for his store, *Eckstein* offered to remove the projecting stones from his own wall so as to give *McCourt* full possession of the eight inch space, but was prevented by *McCourt*. If this was so, and the jury should so find under proper instructions, then it is the opinion of the whole court that such facts would constitute a valid defense as to the space so occupied. We have no doubt that a disseizor, especially one who has disseized the true owner by mistake or inadvertence, may relinquish or surrender the possession to the owner; and if he does so, or offers in good faith to do so, and is prevented by the act of the owner, then the owner cannot thereafter maintain ejectment against him. We have searched for no authorities in support of this principle; but a principle so obviously in harmony with equity and justice when applied to the peculiar facts of the case before us, needs no such support.

*By the Court.*—The judgment of the circuit court is reversed, and a *venire de novo* awarded.