# Smith v. Hickman.

*Contract—Construction of particular paragraphs.*

In construing a paragraph of an agreement the court will consider the entire contract, and give to it its legitimate and fair meaning; and in arriving at the meaning of a phrase in one paragraph of a contract it is proper to consider the meaning which was attached to it by the parties in another part of the contract, where the phrase was used in the same connection and with regard to the same subject-matter.

*Words and phrases—Oil and gas lease—Found in paying quantities.*

A contract in an oil and gas lease containing the phrase " and as much longer as oil or gas is found in paying quantities," means and as much longer as, under the operations of the lease, oil or gas continues to be produced in paying quantities. So long as the wells drilled by the lessee continue to supply oil or gas in paying quantities the lease remains in force.

46, (1900).] Syllabus—Opinion of Court below.

*Oil and gas lease—Election of lessor to take well and rig, etc.*

Where an oil and gas lease provides for the abandonment of a nonproductive well, and that in such event the lessor may have the gas " by paying the ordinary price for casing and rig," upon the abandonment of a well which had been productive or paying, but which had become nonproductive, the lessor may, if he so elect, take the well by paying for the casing and rig ; to deny his right would be to play upon the meaning of words.

Argued April 17, 1900. Appeal, No. 49, April T., 1900, by the Peoples Light and Heat Company, in a suit of William W. Smith against V. Q. Hickman and The Peoples Light and Heat Company, from decree of C. P. Washington Co. In equity, No. 1039, granting an injunction. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Bill for injunction. Before TAYLOR, J.

The facts sufficiently appear in the opinion of the court below :

FINDINGS OF FACT.

The defendant company had abandoned the gas well in controversy prior to the filing of the plaintiff's bill, as it was no longer a producer of oil or gas in sufficient quantities to justify marketing the same. Prior to the filing of the plaintiff's bill defendant company sold the tubing in the same to their codefendant, V. Q. Hickman, for $100, said Hickman to pull said tubing at his expense. Plaintiff, the owner of the land on which the same was located and the lessor, filed his bill April 17, 1899, to prevent said contract from being carried out, and to restrain defendant Hickman from pulling said tubing from said well and thereby damaging it, until final hearing, etc. Upon final hearing it was agreed by counsel for both plaintiff and defendants that the only question for the decision of the court was whether or not the said William W. Smith, the plantiff, was entitled under the terms of his lease for said territory for oil and gas to be first tendered the well, on its proposed abandonment when no longer profitable by payment for the tubing and material therein and thereat. We, therefore, find as a fact that the original lease under which said well was drilled provided, among other covenants, that, " In case gas is not found

in sufficient quantity to market, the party of the first part can, if he wishes, have the gas by paying ordinary price for the casing and rig." There is still gas produced by the said well, and the plaintiff says he can utilize it; the defendant company say they have abandoned it because gas is no longer found and produced by said well in sufficient quantity to market, and that it has abandoned the same and sold the tubing to the defendant Hickman for $100. William W. Smith, the plaintiff, has offered to step into the place of Hickman, pay the $100 for the tubing, and in all respects do as well for the defendant company as Hickman, to whom they sold the casing. There is no dispute on any of these points, the defendant company's only contention being that the plaintiff has no right to an option to take said well under any circumstances unless they see proper to sell it to him, and that they cannot be compelled in law, under said lease, to offer said well, first to the plaintiff and have his refusal to accept the same before they can make sale to Hickman or any other person.

### CONCLUSIONS OF LAW.

From the foregoing undisputed facts, and the terms of the lease set forth in plaintiff's bill and not denied at final hearing, William W. Smith, the plaintiff, is entitled to have this well in dispute and the tubing therein, on the payment to the defendant company of the sum of $100 in thirty days and remove the tubing from said gas well, etc., and that the injunction heretofore granted is made perpetual, a decree to this effect to be prepared by the parties and signed by the court.

### DECREE.

[And now, June 29, 1899, this cause came on to be further heard and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, to wit: That the plaintiff, William W. Smith, within thirty days from the date of this decree pay to the defendant, the Peoples Light and Heat Company, the sum of $100, and remove the tubing from the gas well described in plaintiff's bill, and place the same at the disposal of the Peoples Light and Heat Company, defendant.

That the injunction formerly granted in this case, to restrain

the defendants, the said V. Q. Hickman and Peoples Light and Heat Company and all other persons, by the order or permission of said defendants or either of them, from entering upon the premises described in plaintiff's bill, and especially from in any way interfering or tampering with the gas well located thereon, be made perpetual.

It is further ordered that the costs of this suit be paid by the defendants.] [1]

Eo die defendants except to decree of court and at their request a bill is sealed.

The Peoples Light and Heat Company appealed.

*Error assigned* was in entering decree, reciting same.

*R. W Irwin,* with him *Todd & Wiley,* for appellant.—In construing a deed, the whole must be taken into consideration, and to each clause and word must be assigned their rational distinct meaning, if this can possibly be done : Wharton v. Fisher, 2 S. &. R. 178 ; Ludwig v. Leonard, 9 W. & S. 44.

In the construction of a lease, in order to ascertain the intention of the parties, we must give to every part of it its fair and legitimate meaning : Mattocks v. Cullum, 6 Pa. 454.

Where the intent of the parties is not clear, but in equilibrio, the words of a deed should receive their natural construction : Hannum v. West Chester, 70 Pa. 367.

Where the words are ambiguous a deed or grant is to be construed most strongly against the grantor : Klaer v. Ridgway, 86 Pa. 529.

We are not aware of any authorities more directly in point which would aid the court in determining the meaning of the disputed words of this lease, but we submit that giving them their fair, reasonable and natural interpretation, the meaning is that if gas was not found in sufficient quantities to market when the search was completed then the lessor might elect to take the well; but that when gas had been found and the well had been used for years until it was exhausted, the lessor did not then have the right to elect to take it, because that was not the contingency upon which his right of election was made to depend.

*T. F. Birch,* for appellee.—While " find " is synonymous with

"discover," yet the words are not interchangeable. What is once discovered cannot be discovered again, but a thing may be found many times : Crabb, Eng. Synon.

Where the words are ambiguous a deed or grant is to be construed most strongly against the grantor: Klaer v. Ridgway, 86 Pa. 529.

The stipulation of this lease was a part of the consideration moving from the defendant, and in the application of the principle cited ; the lessee granted the privilege of purchase of the materials in the well to the plaintiff, and so far as this clause needs it must be construed in favor of the lessor.

Any construction of this lease other than that of the court below must be strained and inequitable.

OPINION BY W. D. PORTER, J., May 24, 1900 :

The only alleged error assigned in this appeal is the entry of the decree by the learned court below. The facts are undisputed. The plaintiff had on August 9, 1889, executed an oil and gas lease to the predecessors in title of the respondents ; one well had been drilled upon the land, from which gas had issued in paying quantities, and been utilized by the lessees and their successor in title, the appellant, down to the year 1899. Prior to the filing of the plaintiff's bill the appellant company abandoned the said lease and well and sold the casing in the well to the respondent Hickman. The plaintiff thereupon tendered the value of the casing in the well, and the rig, and demanded possession of the well, which the respondents refused, denying that plaintiff had a right to take the well upon payment of the value of the casing and rig.

The only question presented for the consideration of this court is the construction to be put upon the following paragraph of the original lease: " It is further agreed that if gas is found in paying quantities the consideration in full to the party of the first part, instead of royalty, shall be $500 per annum for the gas from each well when utilized. In case gas is not found in sufficient quantity to market, the party of the first part can, if he wishes, have the gas by paying ordinary price for the casing and rig." The contention of the appellant is that gas having been produced by this well in paying quantities, and the same having been utilized, the plaintiff was not

entitled, by force of this paragraph, to demand the well, upon payment of the value of the rig and casing, when the gas ceased to flow in sufficient quantity to market. The argument is, that, "as applied to a search for minerals 'find' is synonymous with 'discover,' and what is once discovered cannot be discovered again: it cannot in any proper sense be affirmed of a producing gas well that gas is still being found; nor of a well that has failed, that gas is not found." The whole contention of the appellant rests upon the meaning of the word "found" in the concluding sentence of the paragraph. The word "find" is, under some circumstances, synonymous with "discover," but, under other circumstances, it is the equivalent of entirely different forms of expression. It may mean to supply, to furnish. Unfortunately for the contention of the appellant, all its rights under the lease, after the 9th day of August, 1894, were dependent upon a construction of the word "found," which is in direct contradiction of that for which he now contends. Those rights were dependent upon a paragraph in the lease which read: "The parties of the second part to have and to hold the said premises for and during the term of five years from the date hereof, and as much longer as oil or gas is found in paying quantities." If the present contention of the appellant is correct all its rights ceased upon the expiration of the five years, unless it kept on continuously making new discoveries of oil or gas in paying quantities. The clause of the lease last above recited, however, has been frequently passed upon by our Supreme Court in construing oil and gas leases, and has a well defined meaning. The phrase, "and as much longer as oil or gas is found in paying quantities," means, and as much longer as, under the operations of the lessee, oil or gas continues to be produced in paying quantities. So long as the wells drilled by the lessee continue to supply oil or gas in paying quantities the lease remains in force. Among the latest cases construing such covenants is that of Cassell v. Crothers, 193 Pa. 359. In construing the paragraph in question we must consider the entire contract and give to it its legitimate and fair meaning. In arriving at the meaning of a phrase in one paragraph of a contract, it is proper to consider the meaning which was attached to it by the parties in another part of the contract, where the phrase was used in the same connection and with

regard to the same subject-matter. When, in any business, certain terms have come to have a well recognized meaning, parties contracting with relation to that business and using such terms are presumed to use them in that sense. It is manifest that the parties to this agreement used the term " oil or gas is found in paying quantities," or "in sufficient quantity to market " in a continuing sense, applying to the lease and to the well at every period of their existence. The word "found," when it referred to the lessee, had the same meaning as " obtained; " when applied to the well it meant "supplied." When, under the terms of this lease, a well produced gas, the lessee had a right to use that gas as long as he might see fit, paying for the well, $500 per annum. If at any time he found, or concluded, that the gas, supplied by the well, was not in sufficient quantity to market, he had the right to relieve himself from the payment of the annual rental by ceasing to use the gas. The lessor might then, if he desired, take the well, by paying for the casing and rig, or he might permit the lessee to destroy it by drawing the casing. This lessor elected to take possession of the well upon its abandonment by the lessee, and to deny his right would be to play upon the meaning of the words, without regard to the terms of the contract.

Decree affirmed at cost of appellant.