# Commonwealth v. Randall, Appellant.

*Criminal law—Forcible entry and detainer—Possession — Title*
*—Evidence—Act of March 31, 1860, P. L. 382.*

In an indictment for forcible entry or forcible detainer, neither the right of possession nor the title to the freehold comes into question. The only consideration is the actual possession and the force used. To sustain the action the prosecutor must show a prior possession and an unlawful detention by force, and ·with a strong hand or by menace or threats. This possession cannot be assumed; it must be proven.

Where a person believes he has an honest claim to property, and enters into possession without force or threats, cultivating the ground and repairing the buildings, he should not be subjected to the hazard of a criminal prosecution to determine a doubtful claim or possession of property.

On the trial of an indictment for forcible entry and detainer where it appears that the defendants entered upon the property without force or threats, and while thus in possession one of them in the presence of the other said to the prosecutor "We won't get out, and you are not able to put us out" and the evidence is not conclusive that the prosecutor was put in fear by the words used, it is for the jury to determine whether the possession of the property was detained from the prosecutor by means of force or threats.

Argued March 7, 1916. Appeal, No. 43, March T., 1916, by defendant, from judgment of Q. S. Luzerne Co., April Session, 1915, No. 234, on verdict of guilty in case of Commonwealth v. Cullen B. Randall and James E. Hadsall. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Indictment for forcible entry and detainer.

GARMAN, J., charged in part as follows:

The defendants are charged in this indictment with having taken possession of the lands of Lyman R. Lutes and Wilbur S. Lutes, and holding possession forcibly and against the will of the prosecutors.

1. [This whole case depends upon the question of pos-

session.  The title is not material.  We need not go back
to inquire who really owned the place.  If in October,
1914, the Lutes were in possession, the defendants then
had no right to go on the premises and take possession.
If the defendants, however, were in possession, or had
been for years, they would have a right to go on the
premises, as well as keep possession.]  (3)

2. [Possession has to be the doing of such things as in-
dicate that a person is claiming the right to possess.] (4)
The Commonwealth comes here and shows you that the
Lutes obtained a title by a sheriff's deed which was
executed many years ago, I think 1887, or along there,
but was not acknowledged until January of this year.
The reason for its not having been acknowledged is not
given, but it was not acknowledged, and was in the
sheriff's office according to both sides.  The execution
of the deed is not offered to show title, but to show a
possession as dating from that deed, in that the title was
in them, but it does not bear on the actual title.  Then
they say that from that time on—both sides testify to
that—Mrs. Randall testifies to that—Judson Lutes took
possession of the place, and for many years managed it.
She maintains that he was managing it for her, but we
say to you that in our judgment that is immaterial.  If
Judson Lutes was on the place, and in possession of it,
and after he died his heirs continued to keep possession
of the place, then these people would not have the right
to go on and expel the Lutes by taking possession and
locking the doors and saying that they would not get out
and that the Lutes were not able to put them out.  So
the Commonwealth asks you to find that by reason of
Judson Lutes having been in possession; by reason of
the fact, as sworn to by Mr. Lutes, that Wilkenson agreed
to pay him rent, but didn't; by reason of the fact that
Lutes paid the taxes continuously up to date; that the
property was assessed to them; and that they went there
and cut off timber and sold it—that these things are

evidence of possession. That is the only way, outside of actually living there that people can indicate possession.

3. [Now, the evidence of possession on the part of the defendants is that of Mrs. Randall that Lutes, being her uncle, was going on there to protect the property for them. But you must find, gentlemen of the jury, from the evidence in this case that either Mrs. Randall or her husband, or her children, or her son, this defendant, or somebody under them, actually had possession of the place, in order to give them possession. Now, the only evidence there might be of anyone having possession for the defendants relates to the possession of Dockey Wilkenson, who according to the testimony here, claimed that he was in there under Mr. Randall.] (5) But the testimony of Mr. Lutes is that Wilkenson admitted Lutes' title, but would not pay any rent and was put off. One of the strongest items of evidence here is the fact of assessment. For many years the property was assessed, according to the testimony, in the name of the Lutes, and the taxes were paid by the Lutes. That is the strongest evidence given in this case. It is evidence whereby the possession may be given. There is no evidence on the part of these defendants that the Randalls paid any taxes at any time since Judson Lutes took possession.

4. [There may be an honest claim on the part of the defendants, it may be possible that in another court, in an action of ejectment, or some other action, they may make Lutes deliver the property, but the law will not allow them to go and take possession in that way.] (6) If a man obtains possession of your house to-day when you and your family are away, and stays in possession, you are not allowed to go and shoot him out of it if you are once out of it. You must get possession by authority of law. And you can see the reason. If physical force is allowed, half of our society would be shooting the other half, and we would relapse into a state of old fashioned anarchy. The law therefore makes it a par-

ticularly grievous misdemeanor to go and take forcible
possession of premises if you are once out of possession,
even if you own them, because the law says if you own
them you may bring an action of ejectment and eventu-
ally on the termination of that action, if your title is
affirmed, then the law not only puts the man out that is
in, but makes him pay damages for keeping your prop-
erty away from you.

5. [In this case the law simply calls this a forcible
entry and detainer.    It does not have to be a force that
physically takes possession of land and holds it.    If
when told to go out of this place the defendants said, "we
won't get out and you are not able to put us out," we are
obliged to say that in your judgment that is sufficient
evidence of menace to justify the action in this case if
that Lutes had possession.]    (7)

6. [Now that is the principal point in the case, you
believe that such a thing occurred, and if you believe pos-
session does not have to be the actual physical living on
it, it must be the exercising of such authority over it as
indicated to the world that he was in possession.]    (8)
Therefore he shows, and Mrs. Randall testifies, that he
sold hay off of the place, that $75 worth was sold off by
this man, if not recently, not many years ago.    What acts
are there on the part of the defendants that indicate they
were actually in possession of these premises, even with
Lutes—that their possession ran with Lutes?    You know
it may have been possible that both parties would have
been in possession all these years.    If the Randalls were
selling off timber, if the Randalls were selling off hay, if
the Randalls were ploughing the ground and paying their
share of the taxes, their possession would be coordinate
with Lutes, and they could go on the place just as well
as Lutes, and both have the right to go on and stay.    But
is there any such evidence?

7. [You have heard the evidence on both sides as to
possession.    If in your judgment the evidence is stronger
in behalf of the Commonwealth, and satisfies you beyond

a reasonable doubt that the defendants went there and took possession and locked the doors and repaired the house and took possession of the place and indicated a disposition to keep it whereby Lutes was in effect forced off the place, why then you may convict them.] (9)

8. [If you do not so believe, and believe that they were there in possession—(and I cannot see how you can believe that because in the opinion of the court the evidence does not bear that out)—then you might bring in a verdict in their favor.] (10)

9. [It is not a question who owns the place. It is a question of whether one person out of possession could go in and take possession, and then exclude the other person by declaring his intention to hold it. That is all there is in this case, and if you find the fact, as the Commonwealth alleges it, you ought to find the defendants guilty.] (11)

Verdict of guilty upon which judgment of sentence was passed. Defendants appealed.

*Errors assigned,* amongst others, were (3-11) portions of charge as above quoting them.

*Rush Trescott,* with him *D. O. Coughlin,* for appellants.—In order to justify a conviction for forcible entry, three things must be shown by the Commonwealth. First: That the prosecutors were in actual possession. Second: That the defendants' entry was forcible. Third: That the detainer was forcible. (Authority: Commonwealth v. Robinson, Addison's Report, page 14, etc.): Kramer v. Lott, 50 Pa. 495; Com. v. Brown, 138 Pa. 447; Thompson v. Com., 116 Pa. 155.

*Frank P. Slattery,* District Attorney, with him *A. L. Turner,* Assistant District Attorney, for appellee, cited: Com. v. Wisner, 8 Philadelphia 612; Com. v. Everhart, 57 Pa. Superior Ct. 192; Penna. v. Waddle, Addison 41;

Pennsylvania v. Robinson, Addison 14; Com. v. Miller, 107 Pa. 276.

OPINION BY KEPHART, J., May 9, 1916:

In an indictment for forcible entry or forcible detainer, neither the right of possession nor the title to the freehold comes into question. The only consideration is the actual possession and the force used: Penna. v. Robinson, 1 Addison 14; 57 Pa. Superior Ct. 204. To sustain an action the prosecutor must show a prior possession and an unlawful detention by force and with a strong hand, or by menace or threats: Commonwealth v. Brown, 138 Pa. 447. This possession cannot be assumed. It must be proven, and courts should be slow to convict where the evidence of prior possession is doubtful or uncertain. The occupant may be wholly without the right of property or possession, yet under this criminal proceeding his possession, secured without force or violence, will be protected. The defendants produced evidence from which their prior possession might be found and contend that the court, in submitting the question of prior possession to the jury, disregarded the effect of their evidence tending to show the priority of their possession. The defendants' predecessors in title had been the owners of the land in dispute. They had entered into an agreement with the elder, Lutz, the prosecutor's predecessor in title, whereby the property was temporarily transferred to him for certain purposes, to wit: the payment of a mortgage. It was contended that this possession was for the use of the defendants' predecessors in title and his acts were for their benefit; but the court below virtually withdrew the question of defendants' priority of possession from the jury. It disregarded, in the charge, appellant's theory respecting the elder Lutz's possession. It is quite true that the sheriff's sale of property on a mortgage to one who holds possession by lease, or license, under the execution debtor, changes the legal aspect of the possession

of the occupant of the premises; but where this occupant of the premises holds by an agreement with the execution debtor, that he will retain possession until the mortgage debt is paid, and he afterwards purchases the mortgage and through foreclosure proceedings instituted on this mortgage, purchases the property, it is questionable whether he does not hold for the use and benefit of the persons with whom he had the agreement. Such was the situation here. Where a person believes he has an honest claim to property, and enters into possession without force or threats, cultivating the ground, repairing the buildings, he should not be subjected to the hazard of a criminal prosecution to determine a doubtful claim of possession or property. A civil remedy has been provided in case of disputed possession for those believing they own the property. The criminal action of forcible entry or forcible detainer was not intended to try title but is to prevent unwarranted seizures and detentions under such conditions as may cause a breach of the peace. The jury should have been instructed that one acting in good faith, under a claim of right, who honestly believes his possession to be valid in law, should not be convicted merely because an apparently better record title may be in the one who asserts a contrary possession. The entry of defendants on the premises was peaceable, without force, threats, menaces or breach of the peace. The property was unoccupied at the time. For such entry on a vacant premises without right, the title being in another, the law provides a speedy remedy for securing possession of the property. The Act of March 31, 1860, P. L. 382, clearly defines what constitutes the offense of forcible entry and forcible detainer. It provides that "when any person shall, with violence, and a strong hand, enter upon or into any lands or buildings, either by breaking open doors, windows or other parts, or by any kind of violence or other circumstances of error......turn out by force, or threats or menacing conduct, the party in

possession, each person so offending shall be guilty of forcible entry." These words imply that either the entry or the detainer must be accompanied with words or acts calculated to alarm or frighten the most timid : Thompson v. Commonwealth, 116 Pa. 155; Commonwealth v. Brown, supra; Kramer v. Lott, 50 Pa. 495. It is not necessary that actual violence be used, but the use of threats, menaces, signs or gestures, such as may give ground to apprehend personal injury, are sufficient: Com. v. Robin, supra. As the evidence was not sufficient to convict of forcible entry, nevertheless, if the prosecutor had a prior possession and the defendants, in detaining the property, violated the terms of the statute, as interpreted by the decisions of the courts, that evidence would be sufficient to convict on that count. The evidence upon which the Commonwealth relied to sustain this branch of the prosecution was the expression of one of the defendants, made in the presence of the other: "We won't get out and you are not able to put us out." The court, at the conclusion of its charge instructed the jury, "if, in your judgment, the evidence is stronger in behalf of the Commonwealth and satisfies you, beyond a reasonable doubt, that the defendants went there and took possession and locked the doors and repaired the house and took possession of the place and indicated a disposition to keep it, whereby the Lutzes were actually forced off the place, then you may convict......It is not a question who owns the place. It is a question whether one out of possession could go in and take possession and then exclude the other by declaring his intention to hold it. That is all there is in this case and if you find that fact as the Commonwealth alleges it, you ought to find the defendants guilty." This clearly did not present the crime of forcible detainer nor did it bring to the attention of the jury the effect the language used had on the mind of the prosecutor. Admitting that the words embodied a threat, the prosecutor may have treated it lightly, may not have been put in fear by it. The prosecutor has some

difficulty in saying that the use of these words did provoke fear in his mind. There is also the intention of holding land present in every adverse possession, but the occupier is not thereby guilty of forcible detainer. Whether the words would alarm or frighten the prosecutor, or were intended to or calculated to do so, considering the conduct of the defendants, was for the jury, under proper instructions from the court. They should further determine that by means of this force or threats, the possession was withheld or detained from the prosecutor. The eighth and tenth assignments of error are sustained.

There was no evidence to support a conviction of forcible entry and the jury should have been so instructed.

The judgment is reversed and a venire facias de novo is awarded.