# Commonwealth *v.* Johnston, Appellant.

*Criminal law—Forcible entry and detainer—Insufficient evidence.*
A prosecution for forcible entry and detainer is not the proper method to try title to real estate. Where the entry on the premises is peaceable and without violence; in default of any evidence that, following such entry, the defendant with force and threats turned the prosecutor out of possession, an indictment for forcible entry and detainer will not lie.

*Leaseholds—Title to real estate—Ejectment.*
An action in ejectment is the proper method to assert the rights to property founded on an oil lease, instead of criminal proceedings for forcible entry and detainer, where the evidence established the fact that the lessor had notified the lessee that the lease was terminated for want of operation and after such notice had resumed peaceable possession of the premises.

Argued March 11, 1919. Appeal, No. 143, April T., 1919, by defendant, from judgment of Q. S. of Warren Co., December Sess., 1918, No. 6, on verdict of guilty in

case of Commonwealth v. Harry Johnston.  Before OR-LADY, P. J., PORTER, TREXLER, WILLIAMS and KELLER, JJ. Reversed.

Indictment for forcible entry and detainer.  Before HINCKLEY, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the defendant was convicted of the offense charged in the indictment.  He subsequently filed motions for a new trial and in arrest of judgment, which the court overruled and passed judgment of sentence on the defendant.  Defendant appealed.

*Errors assigned,* among others, were refusal to give binding instructions for the defendant and dismissal of the defendant's motion in arrest of judgment.

*D. I. Ball* and *D. U. Arird,* for appellant, cited: Cassell v. Crothers, 193 Pa. 359; Com. v. Brown, 138 Pa. 447; Com. v. Randall, 63 Pa. Superior Ct. 238; Thompson v. Com., 116 Pa. 155.

*T. L. Hampson,* and with him *George B. Munn* and *L. C. Eddy,* District Attorney, for appellee.

OPINION BY KELLER, J., April 21, 1919:

In 1884, N. Dietsch leased to S. B. Logan, for the purpose of mining for oil and gas, a tract of forty acres in Pleasant Township, Warren County, for the term of twenty years "with the right of renewal thereafter so long as oil or gas shall continue to be found" upon a royalty of one-eighth of the "oil or gas discovered, excavated, pumped and raised."  The lease reserved to the lessor the full use of the premises except such part as should be necessary for mining purposes and a right-of-way thereto and provided: "If oil or gas is found upon the premises hereby leased within two years from the

date hereof, then this lease shall continue in force so long as oil or gas shall continue to be found, whether for twenty years, more or less, time of getting the oil being the essence of the lease." The lessee drilled two wells within two years from the date of the lease, in both of which oil was found. No other wells were drilled. In 1895, Dietsch conveyed part of the tract, including the portion containing the wells, to the Oakland Cemetery Association, which used the ground for burial purposes. The oil lease was assigned to the prosecutor, William O'Neil, who continued to produce oil until the fall of 1916. For some years before that time he had ceased pumping and obtained the oil by bailing, which he testified was done "generally once every two weeks, and sometimes not for a month, and sometimes he would miss a couple of months' bailing." Since the fall of 1916, the prosecutor produced no oil, but a man who was accustomed to work for him had, without his knowledge or direction, bailed well No. 2, in the spring of 1917, obtaining about three barrels, none of which was run into the pipe line. The apparatus was out of repair, and the reels dilapidated and unsafe to use.

On March 23, 1918, the cemetery association, through its attorney, notified O'Neil that his rights as lessee had long since terminated and ceased for want of operation and that he had no rights to enter upon or operate the said lands and that any entry thereupon by him would be a trespass; and coincident therewith or shortly thereafter took possession of the ground covered by said wells, and planted a hedge, cutting off access to the wells from the road or right-of-way.

On November 6, 1918, nearly seven and a half months after the receipt of said notice, O'Neil hired a couple of men and a team of horses and endeavored to force his way up to the wells, for the purpose of bailing them. He was stopped by the defendant, who, as superintendent of the cemetery association, had been in charge of the grounds since April, 1917, and who said he had

orders from the trustees of the association, not to allow him to bail the wells or go upon the lease at all, and that he was going to carry them out. After attempting to drive the team in at intervals for several hours, and being stopped by the defendant and his men, O'Neil at length desisted and brought this prosecution. The indictment charged the defendant with forcible entry and detainer in the words of the Act of March 31, 1860, P. L. 382, Sections 21 and 22, and he was convicted generally of the offenses charged in the indictment.

The evidence was not sufficient to convict the defendant of forcible entry. His entry on the premises was peaceable, without violence or a strong hand or any circumstances of terror, nor was there any proof that following such peaceable entry, he had by force or threats or menacing conduct turned the prosecutor out of possession: Commonwealth v. Randall, 63 Pa. Superior Ct. 238. Did the evidence justify a conviction of forcible detainer?

A prosecution for forcible entry and detainer is not the method to try title to real estate, nor even the right of possession: Commonwealth v. Randall, supra. We are concerned only as to whether there was such possession of the premises in O'Neil, immediately prior to November 6, 1918, as to furnish the basis for this prosecution, for peaceable possession in the prosecutor is necessary: Commonwealth v. Conway, 1 Brewst. 509; that is, a possession not contested or disturbed: Commonwealth v. Housknecht, 1 Kulp 367; Commonwealth v. Knarr, 135 Pa. 35; Commonwealth v. Keeper of Prison, 1 Ashm. 140; Commonwealth v. Morris, note in 1 Ashm. 146.

The lease conferred on the lessee the right to operate the wells for the common good of both parties, paying the lessor the royalty reserved: Glasgow v. Chartiers Oil Co., 152 Pa. 48; and the obligation to operate them arose by necessary implication: Ray v. Natural Gas Co., 138 Pa. 576. It contemplated operations prosecuted in

the manner in which the business is ordinarily conducted and. with reasonable or ordinary diligence: McNish v. Stone, 152 Pa. 457, note.

The definite term of twenty years fixed in the lease expired in 1904; thereafter it continued in force and effect only so long as oil was found. The word "found" as used in this connection is equivalent to "obtained": Smith v. Hickman, 14 Pa. Superior Ct. 46; or "produced": Cassell v. Crothers, 193 Pa. 359. The words "so long as" created a limitation: McCalla's Est., 16 Pa. Superior Ct. 202, p. 205; or at least a condition subsequent, vesting in the lessor a waivable option to terminate the lease when the contingency happened, and if exercised the estate was terminated as if the term had expired: 16 R. C. L. 1100-01; Hanley Falls Creamery Co. v. Milwaukee Dairy Co., 148 N. W. 46 (Minn.); 52 L. R. A. (N. S.) 718. On the happening of the contingency, that is, as soon as oil was no longer obtained or produced, the lessor was at liberty to rid himself of his tenant and resume the possession of the land: Galey v. Kellermann, 123 Pa. 491; Wills v. Natural Gas Co., 130 Pa. 222; Ray v. Natural Gas Co., 138 Pa. 576; when oil was no longer found or produced, it became a tenancy in the nature of a tenancy at will: Cassell v. Crothers, supra, p. 365; and was liable to be terminated by either party: Ibid, p. 369; and when terminated, the lessor had a right to enter peaceably: Overdeer v. Lewis, 1 W. & S. 90; and being in possession, might retain it: Taylor v. Cole, 3 Term Reps. 292, p. 295.

As long as nothing was done to terminate the lease, both lessor and lessee were in possession of their respective interests. On March 23, 1918, however, the lessor notified the lessee that by reason of his long-continued failure to operate the wells, the lease was terminated, and followed this notice by such occupation of the ground as was possible, and by planting a hedge shutting off the wells from the road or way leading to them, and thereby assumed sole and entire possession of the tract.

We are not convinced that such action was not justified. At the time the notice was given, no oil had been produced by the prosecutor for a year and a half, although his previous accustomed practice had been to bail the wells every couple of weeks or at furthest every other month. This was such an unreasonable delay of operations as to justify a court in declaring that oil was no longer being found or produced within the meaning of the lease: Cassell v. Crothers, supra. But whether the notice was justified or not, it was an unequivocal declaration that the lease was terminated, that the lessee no longer had any rights in the land and that the lessor claimed sole ownership and possession of the premises. If not justified it constituted an ouster, sufficient to support an action of ejectment: 9 R. C. L. 856; McCourt v. Eckstein, 22 Wis. 153; 3 Rawle's Bouvier, p. 2432; Jordan v. Surghnor, 17 S. W. 1009 (Mo.); Kellogg v. Gilfillan, 10 Atl. 888; 8 Sadler 146. The lessor took as complete possession of the land as was possible. The wells were not producing, and consequently the rule laid down in Westmoreland Gas Co. v. Dewitt, 130 Pa. 235, was not applicable. The prosecutor did nothing to dispute this possession until the date of the alleged forcible entry, November 6, 1918, when he came up the road or right-of-way with his men and team of horses and attempted to force his way over the hedge to the wells. The height of the hedge is not material. It evidenced the fact that the cemetery association had, as landlord, retaken the land into its possession and obstructed the right-of-way to it and that such retaking and obstruction had existed for months. Even a wrongful possession by unlawful eviction, may ripen into a peaceable possession: 11 R. C. L. 1151-1152.

We are of the opinion that under the evidence the prosecutor was not on November 6, 1918, in such peaceable possession of the leased premises as to sustain this prosecution, and that the defendant was justified in

using reasonable force to prevent his forcible entry on the lands.

If the prosecutor has any rights in the leased premises and the wells thereon, he can assert them in an action of ejectment: Karns v. Tanner, 66 Pa. 297; Barnsdall v. Bradford Gas Co., 225 Pa. 338.

The seventh and eighteenth assignments of error are sustained and the judgment is reversed.